UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JESUS ROBELDO AGUILAR,<br><br>Plaintiff,<br><br>vs.<br><br>WARDEN, YANKTON FEDERAL PRISON CAMP,<br><br>Defendant. | 4:26-CV-04018-RAL<br><br>OPINION AND ORDER GRANTING MOTION TO DISMISS |

Petitioner Jesus Robeldo Aguilar filed a petition for a writ of habeas corpus under 28 U.S.C § 2241. Doc. 1. Aguilar challenges the calculation of his earned time credits, specifically that the Federal Bureau of Prisons (BOP) "failed to credit 11-29-22 [to] 3-13-2023 ('hold over' time) in [his] [First Step Act (FSA)] time credit calculation." Id. at 7 (cleaned up). Aguilar requests that this Court direct the BOP to correct the calculation of his FSA time credits from the commencement of his sentence. Id. at 8. The Warden of Federal Prison Camp Yankton (the Warden) moved to dismiss the petition for lack of subject matter jurisdiction and argued that Aguilar had raised a challenge to the conditions of his confinement rather than the fact or duration of his sentence. Doc. 7. A magistrate judge issued a report and recommendation, Doc. 13, recommending denying the motion to dismiss, although much of her analysis has now been abrogated by the Eighth Circuit's recent opinion, Osorio-Calderon v. Warden, FCI Sandstone, 179 F.4th 1158 (8th Cir. 2026). The Eighth Circuit's decisions in Osorio-Calderon and Fortner v. Eischen, 170 F.4th 655 (8th Cir. 2026), lead this Court to grant the Warden's motion to dismiss.

## I. Background

On November 10, 2022, Aguilar was sentenced in the Central District of California in Case No. 2:21CR00113-05GW. Doc. 1 at 2. Aguilar alleges that the BOP has failed to provide him FSA time credits for the period between November 29, 2022, when his sentence commenced, and March 13, 2023. Id. at 7. He, and others bringing similar challenges, have termed this period "holdover time." Id. Aguilar argues that under the FSA the BOP is required to allow him to accrue FSA time credits from the day his sentence commences. Id. at 8. Aguilar filed a grievance with the BOP seeking a correction of his FSA time credit calculation, a first appeal after that grievance was denied, a second appeal after the first appeal was denied, and a third appeal after the second appeal was denied. Id. at 3–4. The BOP did not respond to the third appeal for forty days, and on January 23, 2026, Aguilar filed the instant petition challenging the calculation of his earned time credits. Id. at 4.

The Warden moved to dismiss the petition for lack of subject matter jurisdiction, arguing (1) no federal subject matter jurisdiction exists because Aguilar is challenging his place of confinement given that the BOP has already credited Aguilar with the maximum of 365 FSA credits toward early termination of his sentence and any additional credits can only go toward prerelease custody, a discretionary BOP decision which this Court cannot review; or (2) alternatively, the BOP correctly calculated the date Aguilar could begin earning FSA credits. Doc. 7. Aguilar filed his pro se opposition to the motion to dismiss, which concluded, "If the BOP does not calculate time credits in accordance with the statute[,] this can directly effect [sic] the length of a prisoner's sentence, in this case the Petitioner." Doc. 11 at 5. The magistrate judge then issued a report and recommendation that the motion to dismiss for lack of jurisdiction be denied. Doc. 13. The Warden filed an objection to the report and recommendation. Doc. 14.

## II. Standard of Review

This Court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's report and recommendation, a district court judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

The Warden moved to dismiss the petition for lack of subject matter jurisdiction. Doc. 7. As a general matter, the Federal Rules of Civil Procedure apply to habeas corpus proceedings to the extent that they are not inconsistent with specific habeas corpus rules. Banister v. Davis, 590 U.S. 504, 511 (2020) (citing Fed. R. Civ. P. 81(a)(4)). This includes Rule 12 of the Federal Rules of Civil Procedure. Ebert v. Clarke, 320 F. Supp. 2d 902, 909 (D. Neb. 2004) (collecting cases); Hemsher v. United States, No. 4:19-CV-04172, 2020 WL 4719985, at *7 (D.S.D. Feb. 10, 2020), report and recommendation adopted as modified, 2020 WL 2092896 (D.S.D. May 1, 2020); Franklin v. Dooley, 4:15-CV-04149, 2015 WL 9608750, at *1 (D.S.D. Nov. 23, 2015), report and recommendation adopted, 2016 WL 67695 (D.S.D. Jan. 5, 2016).

A Rule 12(b)(1) challenge to subject-matter jurisdiction can be either facial or factual in nature. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject-matter jurisdiction. V S Ltd. P'ship v. Dep't of Hous. & Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the "court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at

729 n.6). A facial challenge to federal jurisdiction limits the court; the court must view the allegations in the light most favorable to the plaintiff. See Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977. In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." Osborn, 918 F.2d at 729 n.6 (internal citation removed). In a factual challenge, the court need not view the evidence in the light most favorable to the non-moving party. See id. at 729 n.6, 730 (quoting Mortensen, 549 F.2d at 891).

## III. Analysis

### A. Accrual and Application of Earned Time Credits Under the First Step Act

Good time credit differs from earned time credit. Section 3624(b) of title 18 U.S.C. of the United States Code "governs good time credits," and "provides that a prisoner serving a term longer than one year may earn up to fifty-four (54) days of credit per year if the prisoner 'has displayed exemplary compliance with institutional disciplinary regulations.'" Cobb v. Hendrix, No. 2:20-CV-00014, 2020 WL 5513425, at *1 (E.D. Ark. Sept. 14, 2020), as amended (Sept. 15, 2020) (citing Barber v. Thomas, 560 U.S. 474, 483 (2010) (upholding the BOP's good conduct credit calculation)).

In contrast, earned time credits (ETC) are governed by the FSA, Public Law No. 115-391, 132 Stat. 5195, which was enacted on December 21, 2018. Under the FSA, time credits may be

earned by eligible prisoners who successfully complete "evidence-based recidivism reduction programming" or "productive activities." 18 U.S.C. § 3632(d)(4)(A). Time credits are earned at the rate of "10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming [EBRR programs] or productive activities." Id. § 3632(d)(4)(A)(i). "An EBRR program is an activity that either 'has been shown by empirical evidence to reduce recidivism' or that research suggests will 'likely . . . be effective in reducing recidivism,' and that 'is designed to help prisoners succeed in their communities upon release from prison.'" Miles v. Bowers, 173 F.4th 372, 374 (1st Cir. 2026) (quoting 18 U.S.C. § 3635(3)(A)–(B)). Certain minimum and low risk prisoners are eligible to earn an additional 5 days of time for every 30 days of successful participation. 18 U.S.C. § 3632(d)(4)(A)(ii).[1] Notably, the FSA does not limit the amount of ETCs a prisoner can earn. See 18 U.S.C. § 3632(d)(4) (no limit in FSA); id. § 3624(g)(10) ("The time limits under subsections (b) and (c) [of the Second Chance Act] shall not apply to prerelease custody under this subsection.").

The FSA distinguishes between earning time credits and applying time credits: "Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the [BOP] shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." Id. § 3632(d)(4)(C). See also Miles, 173 F.4th at 381 ("Put simply, the fact that the risk and needs assessment is a prerequisite for applying credits does not mean that it is a prerequisite for earning them.") (emphasis in

[1] Prisoners with a Medium or High PATTERN score earn 10 ETCs every 30 days of successful participation, and prisoners with a Low or Minimum PATTERN score for two consecutive assessment periods earn 15 ETCs every 30 days of successful participation. 18 U.S.C. §§ 3632(d)(4)(A)(i), (ii).

original). Prisoners eligible for consideration for transfer to prerelease custody or early transfer to supervised release "are those who have 'earned time credits . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment' and who have been determined to be 'a minimum or low risk to recidivate.'" Fortner, 170 F.4th at 657 (citing 18 U.S.C. § 3624(g)(1)). Section 3624(c)(4), which governs prerelease custody, additionally provides, "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621."

The FSA places a number of limitations on the accrual of time credits. Time credits may not be earned "during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii). Prisoners serving sentences for a conviction under one of the enumerated provisions of law in the First Step Act are ineligible to receive earned time credits. Id. § 3632(d)(4)(D) (listing provisions of law that render a prisoner ineligible to earn time credits). Not all programs or activities that a prisoner may engage in while incarcerated qualify for time credits under the statute, although in practice, the BOP has "a fluid approach to awarding FSA time credits that appears in at least two other circumstances." See id. §§ 3635(3), (5); Miles, 173 F.4th at 376-77. These circumstances include "allowing prisoners to earn time credits, even without participation in EBRR programs, when the prisoners are 'able and willing' to complete programming post-assessment but suitable programming is unavailable" or "when '[t]emporary operational or programmatic interruptions authorized by the Bureau . . . prevent an inmate from participation in EBRR programs,' the inability to participate 'will not ordinarily affect an eligible inmate's 'successful participation' for the purposes of FSA Time Credit eligibility,'" which can be more frequent when understaffed BOP facilities go into lockdown. Miles, 173 F.4th at 376–77 (citing Borker v. Bowers, No. 24-10045, 2024 WL

2186742, at *2–3 (D. Mass. May 15, 2024) (emphasis omitted) (internal quotation marks omitted), appeal dismissed, 2024 WL 5319356 (1st Cir. Oct. 25, 2024); Program Statement 5410.01, at 4 (Section 3(c)); Mohammed v. Stover, No. 3:23-CV-757, 2024 WL 1769307, at *6 (D. Conn. Apr. 23, 2024) (noting that under the FSA, inmates earn credits "by virtue of their 'opt-in' status, even if they are not actively participating in any assigned EBRR or PA") and quoting 28 § C.F.R. 523.41(c)(3)). Essentially, "prisoners [can] accrue credits based on the number of days they spent seeking to participate in programming that is unavailable for reasons attributable to the BOP." Miles, 173 F.4th at 377.

The FSA also places a number of limitations on the application of time credits. "If an eligible prisoner's sentence includes a term of supervised release after imprisonment, the BOP may apply earned FSA time credits [ ] to begin the term up to twelve months earlier." Fortner, 170 F.4th at 657 (citing 18 U.S.C. § 3624(g)(3)). After the prisoner has applied the twelve-month maximum number of earned time credits towards beginning his term of supervised release early, "[t]he BOP shall apply additional earned FSA time credits to expedite the prisoner's eligibility for prerelease custody in a residential reentry center (halfway house) or in home confinement." Id. (citing 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)). As these credits accumulate, they will move up a prisoner's conditional prerelease date, which is the day that the BOP may consider eligible prisoners for prerelease custody, such as home confinement or a residential reentry center. See 18 U.S.C. § 3624(g)(1)(D)(i), (g)(2); Doc. 9 ¶¶ 17–20 (explaining that Aguilar's "best case scenario" is a projected conditional RRC placement date of September 24, 2028); see also Doc. 9-2 at 3.

### B. Jurisdiction Over FSA-Related Challenges

A federal court has subject matter jurisdiction over a habeas petition under 28 U.S.C § 2241. "Good-time (or earned-time) credits usually shorten an inmate's sentence. Therefore, when

an inmate alleges unlawful deprivation of good-time credits, the relief he seeks is immediate or speedier release from imprisonment and 'his sole federal remedy is a writ of habeas corpus.'" Minter v. Bartruff, 939 F.3d 925, 928–29 (8th Cir. 2019) (parentheses in original) (quoting Preiser v. Rodriguez, 411 U.S. 475, 500 (1973)); see also Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) ("If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy. It is the substance of the relief sought which counts.") (citing Preiser, 411 U.S. at 499); United States v. Thompson, 297 F. App'x 561, 562 (8th Cir. 2008). Such petitions must be filed in the district in which the petitioner is incarcerated, which for Aguilar is the District of South Dakota. See Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004); Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002); Bell v. United States, 48 F.3d 1042, 1043–44 (8th Cir. 1995). In addition, "[a] federal inmate normally must exhaust his administrative remedies before seeking habeas relief under 18 U.S.C. § 2241." Jennings v. Yates, No. 2:22-CV-130, 2023 WL 3025487, at *2 (E.D. Ark. Apr. 20, 2023) (citing Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009)).

> The BOP has a four-step administrative exhaustion process for resolving inmate grievances: (1) a prisoner must submit an informal resolution with prison staff; (2) if the informal resolution is denied, a prisoner must submit a formal grievance to the Warden, on form BP-9; (3) if the formal grievance is denied, a prisoner must file an appeal of the Warden's decision to the appropriate Regional Director, on form BP-10; and (4) if the appeal is denied, the prisoner must challenge the Regional Director's decision by taking a final appeal to the General Counsel, on form BP-11.

Id. (citing 28 C.F.R. §§ 542.13–542.18). The Eighth Circuit has held that prisoners may use a habeas petition to challenge the fact or duration of their confinement. Spencer v. Haynes, 774 F.3d 467, 469-70 (8th Cir. 2014). Before Congress enacted the FSA, the Eighth Circuit had held that a prisoner may not use a habeas petition for a "conditions-of-confinement claim." Id. at 471; Kruger, 77 F.3d at 1073.

The FSA's earned time credit structures and how the BOP has chosen to treat those credits have resulted in a new type of habeas claim. In the last seven months, the Eighth Circuit has issued two opinions discussing claims brought by prisoners challenging the calculation and application of FSA credits. Those two cases—Fortner, 170 F.4th 655 (decided March 13, 2026), and Osorio-Calderon, 179 F.4th 1158 (decided June 30, 2026)—guide consideration of Aguilar's petition.

Osorio-Calderon is the more straightforward decision. Osorio-Calderon accumulated 1,095 days of time credits, of which 365 days were applied to advance his projected release date and the remaining 730 days were applied toward time in prerelease custody. Osorio-Calderon, 179 F.4th at 1162. Although Osorio-Calderon became eligible for prerelease custody in July 2024, the BOP denied his request to be placed in prerelease custody, and he remained incarcerated at a BOP facility well into 2026. Id. After the BOP denied his request to be placed in prerelease custody following the date of his eligibility, Osorio-Calderon filed a petition seeking "an order requiring his immediate transfer to prerelease custody" or in the alternative, "mandamus relief compelling the BOP to effectuate that transfer." Id. (citing 28 U.S.C. § 1361). Osorio-Calderon argued that "although the BOP retains discretion regarding the manner and location of prerelease placement, Congress removed any discretion over whether an eligible prisoner will be transferred" by using the word "shall" in sections 3632(d)(4)(C) and 3624(g) of the FSA. Id. at 1163 (explaining that "[s]ection 3632(d)(4)(C) provides that earned 'time credits...*shall* be applied toward time in prerelease custody or supervised release' and that the BOP '*shall* transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.'") (emphasis in original).

Because the "BOP made an individualized determination that under § 3621(b) that Osorio-Calderon would not be transferred to prerelease custody," the Eighth Circuit concluded that the

BOP's decision was "not reviewable by any court." Id. at 1165 (quoting 18 U.S.C. § 3621(b)). Osorio-Calderon is congruent with the BOP's "longstanding discretion under § 3621(b)," and the frustration of "practical realities of safe and effective reintegration" that could arise if the BOP were required to "transfer prisoners immediately upon eligibility, without considering whether an appropriate prerelease placement exists." Id. The Eighth Circuit did not discuss whether the district court had subject matter jurisdiction over Osorio-Calderon's habeas petition but decided that Osorio-Calderon was not entitled to relief because the BOP's decision not to move up his release date was unreviewable under § 3521(b).

The Fortner decision is a bit less straightforward but addresses habeas jurisdiction, albeit in sections that appear to be dicta. 170 F.4th at 656, 658-59. Fortner was a federal prisoner detained at the minimum security BOP facility in Minnesota. Id. at 656. After the BOP denied Fortner's request for expedited transfer to prerelease custody, Fortner filed a motion for habeas relief under 28 U.S.C. § 2241, "alleging that the BOP wrongfully refused his request to properly award and apply additional [FSA credits] for the 543 days he was incarcerated in Texas that would make him eligible for transfer to prerelease custody sooner." Id. at 656-57. Fortner argued that if the BOP were to apply the FSA credits he earned in Texas, he would have been eligible for prerelease custody at the time he filed his petition. Id. at 657. Before the Eighth Circuit decided the case, but after oral arguments, Fortner "was moved to a halfway house, which is precisely the relief his habeas petition requested and the BOP previously denied." Id. at 659. The Eighth Circuit in Fortner concluded that it lacked jurisdiction because Fortner's appeal was moot due to Fortner's release to a halfway house. Id. at 658, 660.

The Fortner decision, despite ultimately dismissing the appeal as moot, framed the question as:

> [W]hether, when the Bureau of Prisons (BOP) denies a federal prisoner's request for expedited transfer to prerelease custody, does a district court have jurisdiction under the federal habeas corpus statutes, 28 U.S.C. §§ 2241-55, to consider the prisoner's claim that the BOP violated his statutory rights under the First Step Act?

Id. at 656. The beginning of the "Background" section of the decision addressed that issue and "The Underlying Legal Issue" section largely answered that question. Because Fortner's requested relief would only correct the date he would be eligible for transfer to prerelease custody, the Eighth Circuit saw the ultimate issue as "whether conditions of confinement claims are cognizable in habeas." Id. at 658. Although the Supreme Court had left that question open in Preiser, the Fortner decision noted that the Eighth Circuit had "joined what is now the long side of the longstanding circuit split" in Kruger, 77 F.3d at 1073, holding that habeas is not the proper remedy where "the prisoner is not challenging the validity of his conviction or the length of his detention." Fortner, 170 F.4th at 658. The Fortner decision stated that Kruger and Spencer—both cases decided before Congress enacted the FSA— "appear to dispose of this case." Id. at 658. "If Fortner receives the remedy he seeks, he would still be detained for the same length of time, though he would serve the detention in a different location with better conditions." Id. ("The relevant statute calls those in prerelease custody 'prisoners' who are serving 'a term of imprisonment.' 18 U.S.C. § 3624(c)."). The Fortner decision then stated "[p]etitioning for supervised release is cognizable in habeas though it is still a form of custody. Supervised release is not detention, but prerelease custody is." Id.

Fortner at a minimum suggests that federal courts lack jurisdiction in habeas over claims like Aguilar's because prerelease to a residential reentry center or home confinement remains detention. Id. (observing that "unlike good-time credits, [FSA credits] beyond the first 365 do not lead to sooner release, only to earlier commencement of prerelease custody."). Yet Congress implemented the ability to earn FSA credits as an incentive for participation in recidivism reducing

programming, and that incentive is meant to continue past obtaining the maximum FSA credits application toward a supervised release start date. The FSA clearly contemplates that prisoners may continue to earn FSA credit after they reach the twelve-month maximum credit toward their supervised release date. See 18 U.S.C. § 3624(g)(3) (providing that the BOP "may transfer [such eligible] prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of [FSA credits] under section 3632"); id. § 3632(d)(4)(C) (providing that FSA credits "shall be applied toward time in prerelease custody or supervised release"). To construe any subsequent prisoner's challenge to FSA credit calculations, after the maximum number of FSA credits has been applied towards beginning a term of supervised release, as a challenge to conditions of confinement seems to deny a prisoner "his sole federal remedy" for improperly calculated FSA credits and undercut the purpose of the FSA. Minter, 939 F.3d at 928–29.

This issue is set for argument before the Supreme Court in November 2026. See Maxwell v. Dinis, No. 25-5930 (U.S. June 1st, 2026) (granting certiorari "limited to the following question: Whether a claim regarding application of time credits under the [FSA], seeking accelerated transfer to a halfway house or home confinement, can be brought in a habeas petition under 28 U.S.C. §2241.").[2] In that case, Respondent Sandra Dinis, Acting Warden, is *not* arguing that the district

---

[2] Maxwell is an inmate at FCI Beaumont Low seeking, in sum, to be transferred from Beaumont Low to prelease custody. Maxwell v. Warden, FCI Beaumont Low, No. 1:22-CV-40, 2023 WL 6635074, at *1 (E.D. Tex. Feb. 13, 2023), report and recommendation adopted, No. 1:22-CV-40, 2023 WL 6578464 (E.D. Tex. Oct. 6, 2023), aff'd sub nom. Maxwell v. Thomas, 133 F.4th 453 (5th Cir. 2025). The district court rejected Maxwell's claim for failure to exhaust administrative remedies before bringing the habeas petition. Id. at *3. On appeal, however, the Fifth Circuit affirmed the district court on the ground that Maxwell was not seeking outright release. Maxwell v. Thomas, 133 F.4th 453, 454 (5th Cir. 2025) ("Here, the nature of Maxwell's requested relief is transfer to a halfway house or home confinement. Under [Melot v. Bergami, 970 F.3d 598 (5th Cir. 2020)]'s "bright-line rule," neither form of relief would entitle him to accelerated release, so the relief he seeks is properly brought in a civil rights suit.")

court lacked jurisdiction over Maxwell's habeas petition as a challenge to conditions of confinement. Brief for the Respondent Supporting Vacatur at 14, Maxwell v. Dinis, No. 25-5930, (U.S. Aug. 5, 2026) ("A prisoner's claim alleging the unlawful withholding of First Step Act time credits and seeking accelerated transfer to a halfway house or home confinement is cognizable in habeas."). Dinis notes a string of cases following Preiser that indicate "a claim alleging unlawfully prolonged imprisonment and seeking immediate or accelerated release from prison—such as release to parole, as in Preiser itself—must be brought in habeas." Id. Dinis argues that Maxwell's petition should "nevertheless fail on other grounds," as Maxwell failed to exhaust available administrative remedies on his FSA claim before seeking habeas under § 2241. Id. at 35.

Regardless, district courts in the Eighth Circuit have relied on Fortner to dismiss habeas petitions raising claims similar to Aguilar's petition. See, e.g. McDonald v. Humphrey, No. 2:26-CV-00051-BSM-JJV, 2026 WL 1811454 (E.D. Ark. June 8, 2026), report and recommendation adopted, No. 2:26-CV-00051-BSM, 2026 WL 1810679 (E.D. Ark. June 23, 2026); Sorensen v. Humprey, No. 2:26-CV-00031-BSM-JJV, 2026 WL 1340826 (E.D. Ark. Apr. 22, 2026), report and recommendation adopted sub nom. Sorensen v. Humphrey, No. 2:26-CV-00031-BSM, 2026 WL 1338791 (E.D. Ark. May 13, 2026) (dismissing the habeas petition where the prisoner sought to be awarded more FSA credits); Durham v. Humphrey, No. 2:26-CV-00027-DPM-JJV, 2026 WL 1450434 (E.D. Ark. Apr. 8, 2026), report and recommendation adopted, No. 2:26-CV-27-DPM, 2026 WL 1162613 (E.D. Ark. Apr. 29, 2026) (dismissing habeas petition where the prisoner has already had the "maximum number of [FSA credits] toward his early release to supervised release"); Madrigal-Vega v. Director, Fed. Bureau of Prisons; & Warden, FPC Duluth, No. CV 25-3675 (JRT/EMB), 2026 WL 2240503 (D. Minn. Aug. 4, 2026) (dismissing the habeas petition where the prisoner claimed the BOP miscalculated his FSA credits). Fortner of course is

controlling precedent in the Eighth Circuit. Although it is tempting to deny the motion to dismiss and await decision in Maxwell v. Dinis, this Court reads Fortner to mean that there is no jurisdiction under § 2241 to provide Augilar the relief he seeks. If Maxwell v. Dinis results in a decision rendering Fortner nugatory, Aguilar can refile a § 2241 petition.

## IV. Certificate of Appealability

"[A] [] prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition." Miller-El v. Cockrell, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253). "Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a [certificate of appealability] from a circuit justice or judge." Id. at 335–36. A certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that demonstrates "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This Court may be incorrect in applying what is dicta in Fortner, and the issue Aguilar raises is on appeal to the Supreme Court of the United States. Thus, reasonable jurists could disagree with this decision, so a certificate of appealability is granted on the issue of whether the district court has jurisdiction over Aguilar's habeas petition.

## V. Conclusion

For the foregoing reasons, it is hereby

ORDERED that the Magistrate Judge's Report and Recommendation, Doc. 13, is declined. It is further

ORDERED that Respondent's Motion to Dismiss, Doc. 7, is granted, and Aguilar's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Doc. 1, is dismissed. It is finally

ORDERED a certificate of appealability hereby issues.

DATED this 11 th day of September, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE